Randall B. Bateman (USB 6482)
C. Todd Kinard (USB 12575)
Sarah W. Matthews (USB 13295)
BATEMAN IP LAW GROUP, P.C.
257 East 200 South, Suite 750
Salt Lake City, Utah 84111
Tel: (801) 533-0320/Fax: (801) 533-0323
Email: mail@batemanip.com, rbb@batemanip.com, ctk@batemanip.com, sm@batemanip.com

*Attorneys for Plaintiff,*
Emergency Essentials, Inc.

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| EMERGENCY ESSENTIALS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NAMECHEAP, INC., a Delaware corporation, d/b/a WHOISGUARD; BLUEHOST, INC., a Utah corporation; and DOES 1 through 5,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO NAMECHEAP'S MOTION TO DISMISS**<br><br><br>Case No. 2:11-cv-00411-BCW<br><br>Magistrate Judge Brooke C. Wells |

---

Plaintiff, Emergency Essentials, Inc. ("Emergency Essentials"), hereby submits this

Memorandum in Opposition to Namecheap's Motion to Dismiss.

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................... vi

FACTUAL CONTENTIONS................................................................................................... vii

ARGUMENT .............................................................................................................................1

   A.  Emergency Essentials's Claims Against Namecheap More Than Meet the Pleading
Standard Under the Federal Rules and Controlling Case Law. ...........................................1

   B.  Emergency Essentials Has Plead Sufficient Facts To Show That It Is Entitled To
Relief With Respect To Its Lanham Act And Utah Unfair Competition Act Claims
Against Namecheap.............................................................................................................1

     1.  *Emergency Essentials has adequately pled a violation of the Lanham Act by
Namecheap.* ...................................................................................................................2

       a.  Emergency Essentials' Lanham Act claim is not barred by Namecheap's status as a
domain name registrar....................................................................................................3

       b.  Emergency Essentials has properly alleged use by Namecheap of its Marks. ...............5

       c.  Emergency Essentials' Utah Unfair Competition Act Claim is sufficiently pled. ..........7

   C.  Emergency Essentials Has Pled Facts That Show It Is Entitled To Relief For
Cybersquatting As Against Namecheap.  ............................................................................8

   D.  Emergency Essentials' State Law Claims Are Not Preempted By The Communication
Decency Act. ....................................................................................................................10

   E.  Emergency Essentials' State Law Claims Have Been Properly Pled And Should Not
Be Dismissed. ..................................................................................................................12

     1.  *Emergency Essentials has properly pled a claim against Namecheap for deceptive trade
practice under the Utah Truth in Advertising Act.* ........................................................13

2.    *Emergency Essentials has conferred a benefit on Namecheap and has thus alleged a valid claim for unjust enrichment against Namecheap.* ..........................................................................14

3.    *The civil conspiracy claim against Namecheap is supported by the allegations in the Amended Complaint.* ......................................................................................................................15

4.    *Namecheap is at least vicariously liable for infringement of the Marks.* ...............................16

**CONCLUSION** ......................................................................................................................**17**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) .................................................................**1**

*Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y. 2009) .................**10**

*Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006)...................................**3**

*Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir. 1986) ..........................**2**

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...............................................**1, 17**

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................**1, 17**

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248 (10th Cir. 1999).................................**1**

*Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H., 2008) .....................**10, 11, 12**

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)................................**2**

*Dubbs v. Head Start, Inc.,* 336 F.3d 1194 (10th Cir. 2003)..........................................**1**

*Dummar v. Lummis*, 543 F.3d 614 (10th Cir. 2008) ...............................................**14**

*Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001)...........................**12**

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) ...................................................**1**

*Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143 (7th Cir. 1992) .....**7**

*Harrison v. PPG Indus.*, 446 U.S. 578 (1980).....................................................**11**

*Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982) ..............................................**7**

*Israel Pagan Estate v. Cannon*, 746 P. 2d 785 (Utah Ct. App. 1987)...............................**15**

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949 (C.D. Cal. 1997) ...............**3**

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1118 (9th Cir. 2007).....................................**12**

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007) ...............................**10, 12**

*Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092 (C.D. Cal. 2009).........................**3, 4**

*Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763 (1992) .............................................**2**

*Universal Communications Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) .........**10, 12**

*Utah Lighthouse Ministry v. F.A.I.R.*, 527 F.3d 1045, 1050 (10th Cir. 2008)........................**2, 5**

*Voicenet Comms., Inc. v. Corbett*, No. 04-1318, 2006 U.S. Dist. LEXIS 61916, 2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ................................................................................11

*White v. Paramount Pictures Corp.*, 1997 U.S. App. LEXIS 3079 (Fed. Cir. Feb. 21, 1997) ........5

## Statutes

15 U.S.C. §1114 ........................................................................................................2

15 U.S.C. §1125(a)(1)(A) ........................................................................................2

15 U.S.C. §1125(d)(1)(B)(i) ....................................................................................9

47 U.S.C. §230(e)(1) ..............................................................................................11

47 U.S.C. §230(e)(2) ....................................................................................10, 11, 12

47 U.S.C. §230(e)(3) ..............................................................................................11

Utah Code Ann. §13-11a-3(1)(c) ..........................................................................14

Utah Code Ann. §13-11a-3(1)(d) ..........................................................................14

Utah Code Ann. §70-3a-309 ....................................................................................8

## Other Authorities

ICANN Registrar Accreditation Agreement §3.3 ....................................................4

ICANN Registrar Accreditation Agreement §3.7.7.3 ........................................6, 16

McGrady on Domain Names §1.06 ..........................................................................4

## Rules

Fed. R. Civ. P. 8(a)(2) ..............................................................................................1

Fed. R. Civ. P. 8(d)(2) ........................................................................................4, 13

# I.  INTRODUCTION

Contrary to the assertions in Defendant, Namecheap, Inc.'s ("Namecheap") Motion to Dismiss, Emergency Essentials has more than met their burden under the required pleading standard.  Emergency Essentials has alleged that it is the owner of trademarks for EMERGENCY ESSENTIALS (the "Marks") and that its rights in the Marks have been infringed by the use of the Marks on the theemergencyessentials.com website (the "Website").  Emergency Essentials has also alleged that Namecheap, through its d.b.a WhoisGuard, was the registrant and presumed legal owner of the Website during at least two months in which Namecheap was on notice that Emergency Essentials' trademark rights were being damaged by the infringing Website. The complaint also alleges that Namecheap is liable under the Anticybersquatting Consumer Protection Act, because Namecheap had a bad faith intent to profit from the mark, and they used a domain name that was confusingly similar to the distinctive mark.

Furthermore, Namecheap fails to apply the governing standard for a Rule 12(b)(6) motion and instead seeks to avoid liability by presenting facts in a light more favorable to itself. Namecheap seeks to place all the liability on defendants William Tingle ("Tingle") and Bluehost, Inc. ("Bluehost"). However, not only is Namecheap responsible for the content of the Website as the listed registrant, but they also failed to promptly identify any other owner of the Website or take any action to ensure the rights of Emergency Essentials were protected  in response to two cease and desist letters.

Namecheap also seeks to avoid liability by claiming immunity under the Communications Decency Act ("CDA"). However, the CDA exempts from immunity <u>any</u> intellectual property

claims. Thus, all state and federal intellectual property law claims must be allowed as they are sufficiently supported by factual allegations.

Because Emergency Essentials has adequately pled its claims against Namecheap, the motion to dismiss must be denied.

## II. FACTS RESPONSE TO DEFENDANT'S "FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT RELATING TO NAMECHEAP"

1.      Emergency Essentials admits that Defendant Namecheap is a registrar of domain names on the Internet.  (Amended Complaint, ¶8).

2.      Emergency Essentials also alleged that WhoisGuard (a d.b.a. of Namecheap) was the listed registrant of the Website (the "Website") and alleged on information and belief the alternate theories that William Tingle ("Tingle") was 1) the licensee of the Website, 2) the principal of the Website,  or 2) the actual registrant of the website.  (Amended Complaint, ¶¶ 24-25).  Emergency Essentials did not allege that Namecheap did not have control over the domain name or Website for which it is the listed registrant.

3.      Emergency Essentials admits that policies of the Internet Corporation of Assigned Names and Numbers ("ICANN") require the registrant's current contact information to be provided for each registered domain. (*Id.* at ¶14). However, Emergency Essentials denies that it does not specify to whom such contact information is to be provided.  The contact information must be provided to the public. (*Id.* at ¶ 9).  Furthermore, an important reason for the ICANN policy requiring contact information is so that intellectual property owners can enforce their rights. (*Id.* at ¶ 10).

4.     Emergency Essentials objects to the Namecheap's characterization that Emergency Essentials recognized that Tingle, rather than Namecheap, engaged in the actual conduct, as Namecheap was alleged to be the listed registrant and was thereby the purported owner of the Website. (*Id.* at ¶ 24).  Moreover, as the listed owner of the Website, Namecheap was repeatedly advised of the infringing material and failed to take down the Website or remove the infringing material.  (*Id.* at ¶¶ 27-32).  Moreover, there is no evidence of record that Goldstein is not affiliated with Namecheap.

5.     Emergency Essentials objects to the characterization that Emergency Essentials alleges that Tingle was the licensee, principal, or actual registrant of the Website and had control over the content of the Website.  The Complaint clearly identifies Namecheap as the listed registrant and, on information and belief, alleged alternatively that Tingle was <u>either</u> the licensee, principal, <u>or</u> actual registrant of the domain name for the Website.  (*Id.* at ¶ 25).

6.     Emergency Essentials admits that it sent two cease and desist letters to Namecheap, who failed to respond. (*Id.* at ¶¶ 27-32).

# III. ARGUMENT

**A.     Emergency Essentials's Claims Against Namecheap More Than Meet the Pleading Standard Under the Federal Rules and Controlling Case Law**

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).  Rule 8(a)(2) of the Fed. R. Civ. P. requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See also, Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).   The purpose of Rule 8(a)(2) is to ensure that a defendant has "fair notice of what the … claim is and the grounds upon which it rests". *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Significantly, "[a] court reviewing the sufficiency of a complaint presumes all of the plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citations omitted).  "Granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999) (reversing dismissal).

**B.     Emergency Essentials Has Plead Sufficient Facts To Show That It Is Entitled To Relief With Respect To Its Lanham Act And Utah Unfair Competition Act Claims Against Namecheap.**

Emergency Essentials provides sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct.

1

1937, 1949 (2009).  Emergency Essential pled standard Lanham Act and Utah Unfair

Competition Act ("UUCA") claims.  Emergency Essential has alleged facts that, if true,

constitute violations of unfair competition law. Namecheap's arguments to the contrary go to the

merits of Emergency Essentials' claims, not to whether the claims have been adequately pled.

Namecheap is making the wrong argument at the wrong time. The Court therefore should deny

the motion to dismiss.

1.   *Emergency Essentials has adequately pleaded a violation of the Lanham Act by Namecheap.*

"The Lanham Act is intended to protect the ability of consumers to distinguish

among competing producers."  *Utah Lighthouse Ministry v. F.A.I.R.*, 527 F.3d 1045, 1050 (10th

Cir. 2008) (quoting *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 774 (1992)) (internal

quotation marks omitted).  To demonstrate trademark infringement, a plaintiff is required to

show that it owns a protectable mark distinctive of its goods or services, and that defendant's use

of a similar or identical mark is likely to confuse, mislead, or deceive consumers as to "the

affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin,

sponsorship, or approval of [defendant's] . . . activities." 15 U.S.C. § 1125(a)(1)(A); *see also* 15

U.S.C. § 1114; *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924-25 (10th Cir.

1986).[1]  To evaluate likelihood of confusion, courts "look at (1) the degree of similarity between

---

[1]   Because "[t]rademark infringement is a type of unfair competition[,] the two claims have virtually identical elements and are properly addressed together. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). Similarly, "[t]he elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004).

2

the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1239 (10th Cir. 2006).

> a.    <u>Emergency Essentials' Lanham Act claim is not barred by Namecheap's status as a domain name registrar.</u>

Namecheap does not challenge the protectability of Emergency Essentials' Mark as distinctive of Emergency Essential's goods and services.  Neither does Namecheap challenge that Emergency Essentials adequately pled allegations sufficient to establish a likelihood of confusion.  Instead, Namecheap argues that it cannot be held liable under the Lanham Act because it is a domain name registrar.  (Memorandum in Support of Namecheap's Motion to Dismiss, docket no. 17, page 2).  Emergency Essentials' Lanham Act claims are not based on Namecheap's role as a registrar, however, they are based on Namecheap's acts as the registrant of the Website.  Namecheap did not only accept the registration for the domain name of the Website, as was the case in *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 959 (C.D. Cal. 1997), Namecheap also engaged in the additional commercial activity of providing its WhoIsGuard privacy protection service for the domain name of the Website, thus becoming the registrant and owner.  This additional act by Namecheap is outside Namecheap's capacity as a registrar.  *See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1103 (C.D. Cal. 2009) ) (explaining that to the extent that Namecheap was the registrant of the domain name and "used" the name, the Anticybersquatting Consumer Protection Act would support the imposition of liability on it, not the grant of immunity to it).

Namecheap was alleged to be the listed registrant and was thereby the purported owner of the Website.[2] (*Id.* at ¶ 24). Moreover, as the listed owner of the Website, Namecheap was repeatedly advised of the infringing material and failed to take down the Website or remove the infringing material. (*Id.* at ¶¶ 27-32). Emergency Essential did allege, in the alternative and on information and belief, that Tingle was either the licensee, principal, or actual registrant of the domain name for the Website. (*Id.* at ¶ 25). Pleading in the alternative, however, is a standard practice under the Federal Rules of Civil Procedure and sufficient facts have been pled to state a claim for relief as to Namecheap under the Lanham Act. *See* Fed. R. Civ. P. 8(d)(2).

Because the registrant and owner of the domain name was listed as WhoIsGuard, *i.e.* Namecheap, Emergency Essentials attempted to contact Namecheap but received no response from Namecheap. All the while, Emergency Essentials' trademark rights were being damaged by use of the Marks on the Website. As the court in *Solid Host* points out, the Lanham Act "contemplates that registrars will respond to trademark owners' complaints and help to resolve disputes between domain name registrants and trademark holders. 652 F. Supp. 2d at 1005. Namecheap, however, did not respond to Emergency Essentials' cease and desist letters. Under these circumstances, the Lanham Act supports the imposition of liability on Namecheap, not a

---

[2] Under the ICANN Registrar Accreditation Agreement ("RAA"), the "Registered Name Holder" of a domain name is the holder of a "Registered Name." The RAA's Section 3.3, which covers a registrar's duty to provide WHOIS service to the public, states that a registrar has a duty to provide name and postal address of a "Registered Name Holder" through the WHOIS service. Based on this language and as McGrady on Domain Names recognizes:

> "one can reasonably conclude from the RAA that the owner of a domain name is the party whose name and address is published in the public WHOIS in the Registered Name Holder (or "registrant") field."

McGrady on Domain Names § 1.06.

grant of immunity for it.  *See e.g. Id.*

        b.    <u>Emergency Essentials has properly alleged use by Namecheap of its Marks.</u>

        " '[U]se in commerce'…mean[s] *commercial use which is typical in a particular industry.*" *White v. Paramount Pictures Corp*., 1997 U.S. App. LEXIS 3079, at *7 (Fed. Cir. Feb. 21, 1997) (emphasis in original) (citation omitted).  Emergency Essentials alleges that it is a company which specializes in selling food storage and other emergency preparedness supplies and that it has developed substantial and valuable goodwill in its Marks.  (Amended Complaint, ¶¶ 15-17).  Emergency Essentials also alleges unauthorized use of the Marks on the Website by Defendants, including Namecheap, in connection with the emergency preparedness supplies, including using bold type hyperlinked text of the Marks to direct consumers to competitors of Emergency Essentials creating a likelihood of confusion.  (*Id.* at ¶¶19-20 and 50-51).  Unlike the trademark usage in *Utah Lighthouse Ministry v. Kremer* that was found to be too attenuated to impose liability under the Lanham Act, use of the Marks by Namecheap was not limited to "an inconspicuous link" to a competitor's website.  527 F.3d 1045, 1053 (10th Cir. 2008).  In fact, Emergency Essentials has alleged that Namecheap was using the Marks in the same fashion as Emergency Essentials itself uses the Marks.  Emergency Essential has thus alleged sufficient facts to state a claim that Namecheap used the Marks.

        Namecheap argues that it was Defendant Tingle and not Namecheap that used the Marks.  This argument, however, goes to the merits of Emeregency Essentials' claim and not to whether sufficient facts have been pled to survive a motion to dismiss.  Alleging in the alternative that, on information and belief, that  Defendant Tingle was either the licensee, principal, or actual

registrant of the domain name for the Website and used the Marks does not change the fact that

Emergency Essentials has alleged that Namecheap also used the Marks.

Moreover, Section 3.7.7.3 of the Registrar Accreditation Agreement states that:

Any Registered Name Holder [registrant] that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. *A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the current contact information provided by the licensee and the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.*

(emphasis added).

Namecheap was the registrant of the Website for at least two months that Emergency

Essentials' Marks were being damaged by the infringement on the Website. (Amended

Complaint, ¶32).  Namecheap did not promptly disclose the contact information for Defendant

Tingle and only disclosed the information after the present lawsuit was filed. (Amended

Complaint, ¶35.) Therefore, Namecheap must accept liability for harm caused by the wrongful

use of the Marks.

At a minimum, Namecheap may be held liable for indirect infringement.  A defendant is

liable for contributory trademark infringement by unauthorized use of trademarks by another if it

is shown that the defendant "intentionally induces another to infringe a trademark, or if it

continues to supply its product to one whom it knows or has reason to know is engaging in

trademark infringement, the [defendant] is contributorially responsible for any harm done as a

result of the deceit." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 854 (1982).  Furthermore, the "willful blindness" of a defendant is enough to support liability for contributory trademark infringement.  *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).  Emergency Essentials has pled facts that demonstrate Namecheap's acts constituted willful blindness to the infringement of Emergency Essentials' Marks, thus the claim should not be dismissed.

Emergency Essentials sent a cease and desist letter via facsimile and certified mail using the contact information provided in the Whois database for WhoIsGuard.  (Amended Complaint, ¶27).  Emergency Essentials also sent a cease and desist letter to directly to Namecheap.  (*Id.* at ¶30). Namecheap failed to respond to either of Emergency Essentials' cease and desist letters until after Emergency Essentials was forced to file the present action. (*Id.* at ¶32).   Namecheap lack of response to the cease and desist letters interfered with Emergency Essentials' ability to protect its intellectual property rights for more than two months, all the while damage was being done to its Marks. Because Emergency Essentials has pled facts sufficient to, at least, state a claim for relief as to Namecheap for indirect trademark infringement, the claim should not be dismissed.

        c.    <u>Emergency Essentials' Utah Unfair Competition Act Claim is sufficiently pled.</u>

As explained above, Emergency Essentials states a claim for which relief can be granted with respect to its Lanham Act claim.  Therefore, Emergency Essentials has

satisfied the third element of its UUCA claim, contrary to Namecheap's argument.  Therefore,

the Court should not dismiss Emergency Essentials' UUCA claim.

**C.     Emergency Essentials Has Pled Facts That Show It Is Entitled To Relief For Cybersquatting As Against Namecheap.**

The factors weigh in favor of finding that Namecheap had a "bad faith intent to profit"

and thus Emergency Essentials' cybersquatting claims should not be dismissed.  Emergency

Essentials has alleged the Website was registered to direct traffic away from Emergency

Essentials' and toward the websites of Emergency Essentials' competitors.  (Amended

Complaint, ¶¶22 and 58-60).  Emergency Essentials has also alleged that Namecheap registered

the domain name for the Website (*Id.* at ¶18) Furthermore, Emergency Essentials has alleged

additional facts that support its claim that Namecheap had a bad faith intent to profit from the use

of its Marks.

Under the federal Anticybersquatting Consumer Protection Act ("ACPA"), as well as the

Utah counterpart (§70-3a-309), courts may consider several factors when determining whether

there is a bad faith intent to profit from a mark, for example under the ACPA the court may

consider:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the

8

intent to tarnish or disparage the mark, by creating a likelihood of
confusion as to the source, sponsorship, affiliation, or endorsement of the
site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain
name to the mark owner or any third party for financial gain without
having used, or having an intent to use, the domain name in the bona fide
offering of any goods or services, or the person's prior conduct indicating a
pattern of such conduct;

(VII) the person's provision of material and misleading false contact
information when applying for the registration of the domain name, the
person's intentional failure to maintain accurate contact information, or the
person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names
which the person knows are identical or confusingly similar to marks of
others that are distinctive at the time of registration of such domain names,
or dilutive of famous marks of others that are famous at the time of
registration of such domain names, without regard to the goods or services
of the parties; and

(IX) the extent to which the mark incorporated in the person's domain
name registration is or is not distinctive and famous within the meaning of
subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

The Amended Complaint contains several facts that support Namecheap's bad faith intent

to profit from the registration of the Website.  First, Namecheap has presented no evidence that it

has trademark or intellectual property rights in the Marks. Neither has The Website's domain

name is not a legal name of Namecheap.  Emergency Essentials has not pled, nor has Namecheap

asserted, that there was prior use of the Marks by Namecheap in connection with a bona fide

offering of goods or services.  Namecheap has not asserted, as it cannot, a bona fide

noncommercial or fair use of the Marks on the Website under the under the domain name.

Namecheap failed to maintain correct contact information for its d.b.a. WhoIsGuard for the

Website in the WhoIs database. (Amended Complaint, ¶27) (A cease and desist letter was sent

via certified mail to Namecheap at the address listed for WhoIsGuard on the WhoIs database and

the mail was returned as undeliverable).  On balance, the factors support a finding that

Namecheap had a bad faith intent to profit.  At a minimum, the allegations raise a plausible claim

for relief that Emergency Essentials is entitled to relief on its cybersquatting claims against

Namecheap.  Therefore, the Third and Eighth Claims should not be dismissed.

**D.     Emergency Essentials' State Law Claims Are Not Preempted By The Communication Decency Act.**

The Communication Decency Act ("CDA") expressly states that "[n]othing in this section

shall be construed to limit or expand <u>any law</u> pertaining to intellectual property."  47 U.S.C.

§230(e)(2) (emphasis added).  State law claims based on intellectual property clearly fall within

this broad exception.  *See e.g., Universal Communications Systems, Inc. v. Lycos, Inc.*, 478 F.3d

413, 422-23 (1st Cir. 2007);  *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690,

704 (S.D.N.Y. 2009).  As each of Emergency Essentials' state law claims pertain to its

intellectual property, *i.e.* its Marks, the CDA does not preempt those claims.

Although the Circuits are split as to the breadth of §230(e)(2)'s exception, the better

reasoned opinions are provided by the First Circuit and Second Circuits.  *See, Doe v.*

*Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H., 2008);  *Atl. Recording Corp. v. Project*

*Playlist, Inc.*, 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009).

"Statutory interpretation begins with the language of the statute. Where . . . that language

is clear and unambiguous, the inquiry is at an end." *Friendfinder Network*,  540 F. Supp. 2d at

299 (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007)).  As noted

in *Friendfinder Network*:

10

> the language of § 230(e)(2) itself does not suggest a limitation to federal
> intellectual property law, but states simply that nothing in this section shall be
> construed to limit or expand any law relating to intellectual property.  As the
> Supreme Court has noted in another context, the modifier 'any' amounts to
> 'expansive language that offers no indication whatever that Congress intended a
> limiting construction.'

*Id.* (citing *Harrison v. PPG Indus.*, 446 U.S. 578, 589 (1980).

The court in *Friendfinder Network* also addresses the limiting provisions included in

§§230(e)(1) and 230(e)(3) stating that there are:

> limiting provisions of § 230 which specifically identify federal or state law as such.
> See 47 U.S.C. §§ 230(e)(1)   ("Nothing in this section shall be construed to impair
> the enforcement of [named federal criminal statutes] or any other Federal criminal
> statute"), (e)(3) ("Nothing in this section shall be construed to prevent any State
> from enforcing any State law that is consistent with this section") (emphases
> added). The content of these provisions indicates that, where Congress wished to
> distinguish between state and federal law in § 230, it knew how to do so. *See
> Voicenet Comms., Inc. v. Corbett*, No. 04-1318, 2006 U.S. Dist. LEXIS 61916,
> 2006 WL 2506318, at *4 (E.D. Pa. Aug. 30, 2006).

> In ruling that § 230(e)(1)'s removal of "any other Federal criminal statute" from
> the scope of the Act did not extend to state criminal law, the *Voicenet* court
> reasoned that "[i]f Congress had wanted all criminal statutes to trump the CDA, it
> could have written [§ 230(e)(1)] to cover "any criminal statute" just as it had
> written § 230(e)(2) to cover "any law pertaining to intellectual property." *Id.*
> Conversely, the use of "any" in § 230(e)(2), in contrast to the use of "federal"
> elsewhere in the CDA, suggests that Congress did not intend the terms to be read
> interchangeably. "It is well settled that where Congress includes particular
> language in one section of a statute but omits it in another section of the same Act,
> it is generally presumed that Congress acts intentionally and purposely in the
> disparate inclusion or exclusion."

*Id*. at 300 (internal quotation marks altered).

Unlike the First and Second Circuits, the Ninth Circuit has construed §230(e)(2) without relying on the plain language of the statue.  *Perfect 10*, *Inc. v. CCBill LLC*, 488 F.3d 1118 (9th Cir. 2007).  Instead, the Ninth Circuit's rationale for construing §230(e)(2) narrowly is because of its concern that state intellectual property laws might have a deleterious effect on the development of the Internet.  *Id.*   As pointed out by the court in *Friendfinder Network*, however, "'[c]ourts are not free to disregard the plain language of a statute and, instead, conjure up legislative purposes and intent out of thin air' under the guise of statutory interpretation." 540 F. Supp. 2d at 300 (quoting *Ruiz*, 496 F.3d at 8.)[3]

Because the CDA does not provide Namecheap with immunity from Emergency Essentials' state law claims they should not be dismissed.[4]

**E.      Emergency Essentials' State Law Claims Have Been Properly Pled And Should Not Be Dismissed.**

Like Emergency Essentials' negligence claim, which Namecheap has not argued is factually unsupported, the Amended Complaint contains sufficient factual allegations to support a plausible claim for relief against Namecheap with respect to the remaining state law claims. Namecheap does not apply the proper standard for analyzing allegations in a complaint for purposes of a 12(b)(6) motion, namely, that the facts are taken in a light most favorable to the

---

[3]  The *Friendfinder Network* court also noted that: "while Congress often acts to protect interstate commerce from the burden of nonuniform state laws, there is nothing in the language of § 230 effecting that protection here." 540 F. Supp. 2d at 300.

[4] Other courts have also applied section 230(e)(2) to state law intellectual property claims. *See e.g. Universal Comms. Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 422-23 (1st Cir. 2007) (assuming that a state law claim of trademark infringement would fall under the exception of section 230(e)(2)); *Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001) (stating that plain language of the statute governs interpretation of the statute, and exempting from immunity a state common law claim of trademark infringement).

plaintiff.   For example, Namecheap repeatedly points to the allegation acknowledging

Namecheap's role as a registrar.  (Amended Complaint, ¶8).  However, Emergency Essentials'

claims are directed to Namecheap's actions outside its capacity as a registrar, namely that it was

Namecheap via WhoIsGuard, who was the registrant of the Website and owner during the time

when Emergency Essentials' Mark were being infringed on the Website.  (*Id.*, ¶ 28).

Furthermore, Namecheap would have the Court look only to Emergency Essentials'

allegations against Defendant Goldstein and ignore that the Federal Rules of Civil Procedure

allow a party to plead in the alternative. Rule 8(d)(2).  The Amended Complaint states that

Defendants, including Namecheap, violated Emergency Essentials' rights under applicable state

laws. (*See e.g.* Amended Complaint, ¶¶49-52, 72-75, 81-82, 86, 97-98, and 101.)  Emergency

Essentials' allegations are sufficient to support its claims against Namecheap and/or the other

defendants despite the Amended Complaint having allegations pled in the alternative.

Furthermore, Namecheap has provided no evidence that Defendants Tingle or Bluehost were not

affiliated with Namecheap, and/or that Namecheap was not responsible for the alleged

misconduct.  Even if Namecheap had provided such evidence, that evidence would go to the

merits of Emergency Essentials' claims, not to whether the claims have been adequately pled.

    1.   *Emergency Essentials has properly pled a claim against Namecheap for deceptive trade practice under the Utah Truth in Advertising Act.*

The Truth in Advertising Act ("TTA") enumerates a list of acts that are deceptive trade

practices, including when a person "causes likelihood of confusion or of misunderstanding as to

the source, sponsorship, approval, or certification of goods or services" or "causes likelihood of

13

confusion or of misunderstanding as to affiliation, connection, association with, or certification by another." Utah Code Ann. §§13-11a-3(1)(c) and (d). Emergency Essentials has alleged that Namecheap is the registrant and presumed owner of the Website. (Amended Complaint, ¶¶ 18 and 24). Emergency Essential further alleged that unauthorized use of the Marks on the Website by Defendants, including Namecheap, in connection with the emergency preparedness supplies, including using bold type hyperlinked text of the Marks to direct consumers to competitors of Emergency Essentials creating a likelihood of confusion as to the source of the goods sold using the infringing Marks and/or that Emergency Essentials was affiliated or associated with the Website. (*Id.* at ¶¶19-20 and 50-51). Thus, Emergency Essentials has stated a claim for relief under the TTA against Namecheap despite alternatively pleading allegations directed towards other named defendants in the present lawsuit.

2.    *Emergency Essentials has conferred a benefit on Namecheap and has thus alleged a valid claim for unjust enrichment against Namecheap.*

Emergency Essentials has alleged that it conferred a benefit on Namecheap, *i.e.* unauthorized use of the Marks on the Website, and that Namecheap appreciated the benefit of using the Marks on the Website. The elements of unjust enrichment are "a benefit conferred on one person by another. …, the conferee must appreciate or have knowledge of the benefit… [and] there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Dummar v. Lummis*, 543 F.3d 614, 623 (10th Cir. 2008).

14

Emergency Essentials has alleged that it expended considerable time and resources to develop and promote the Marks. (Amended Complaint, ¶96).   Emergency Essentials also alleged unauthorized use of the Marks by Defendants, including Namecheap, to direct consumers to the websites of Emergency Essentials' competitors, implying that Defendants appreciated the benefit of using the Marks, *i.e.* using the goodwill of the Marks to gain customers. (*Id.* at ¶25).   As Emergency Essentials has pled allegations supporting its claim against Namecheap for unjust enrichment, that claim should not be dismissed.

       3.       *The civil conspiracy claim against Namecheap is supported by the allegations in the Amended Complaint.*

Emergency Essentials' allegations support the elements of a conspiracy claim against Namecheap which are "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Estate v. Cannon*, 746 P. 2d 785, 790 (Utah Ct. App. 1987) (citations omitted).   Emergency Essentials has alleged that Namecheap allows another person to register a domain name using WhoIsGuard's contact information. (Amended Complaint, ¶¶11-12).   Namecheap is aware that individuals who use WhoIsGuard as the listed registrant of a domain name often do so when infringing intellectual property rights of third parties to avoid detection and slow enforcement efforts. (*Id.* at ¶13).   The object of listing WhoIsGuard as the registrant of the Website in the present case was to slow the efforts of Emergency Essentials to enforce its intellectual property rights.   Emergency

15

Essentials also alleges that Namecheap knew of the infringing activity[5] and acted in concert[6] with, on information and belief, Tingle and/or Bluehost to infringe the Marks and to mislead the public in believing that the Website was sponsored or affiliated with Emergency Essentials. (*Id.* at ¶101).  These facts properly set forth a claim for civil conspiracy against Namecheap.

Despite being the listed registrant and presumed owner of the Website, Namecheap argues that it was not involved in publishing the infringing material.  (Memorandum in Support of Namecheap's Motion to Dismiss, at page 26).  This argument, however, goes to the merits of Emergency Essentials' claim, not whether Emergency Essentials has pled a claim for civil conspiracy.  Futhermore, Namecheap's arguments miss the point that the object of the conspiracy was to slow the efforts of Emergency Essentials to enforce its intellectual property rights. Namecheap has put forth no evidence as to why it was reasonable to take two months to respond to Emergency Essentials' cease and desist letters.

4.     *Namecheap is at least vicariously liable for infringement of the Marks.*

Namecheap is vicariously liable for the act of registrant's who use WhoIsGuard to register domain names.  As explained above, §3.7.7.3 of the Registrar Accreditation Agreement states that:

> Any Registered Name Holder [registrant] that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information and for providing and

---

[5] Emergency Essentials sent a cease and desist letter via facsimile and certified mail using the contact information provided in the Whois database for WhoIsGuard.  (*Id.*, ¶27).  Emergency Essentials also sent a cease and desist letter to directly to Namecheap.  (*Id.*, ¶30).  Thus, Namecheap had knowledge that the Website was infringing Emergency Essentials' intellectual property rights.

[6] "Concert" is defined as "agreement of two or more individuals in a design or plan; combined action; accord or harmony" Dictionary.com, http://dictionary.reference.com/browse/concert.

updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it promptly discloses the current contact information provided by the licensee and the identity of the licensee to a party providing the Registered Name Holder reasonable evidence of actionable harm.

Namecheap was the registrant of the Website for at least two months that Emergency Essentials' Marks were being damaged by the infringing material displayed on the Website. (Amended Complaint, ¶24).  Namecheap did not promptly disclose the contact information for any other Defendant who may have been the actual registrant of the Website, and only disclosed the information after the present lawsuit was filed. (*Id.*) Therefore, Namecheap must accept liability for harm caused by the wrongful use of the Mark.

Emergency Essentials' Thirteen Claim for Relief is sufficient to give Namecheap "fair notice of what the … claim is and the grounds upon which it rests" and should not be dismissed. *See Bell Atlantic v. Twombly*, 550 U.S. at 557 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

### IV. CONCLUSION

Emergency Essentials respectfully requests that Namecheap's Motion to Dismiss be denied because Emergency Essentials has pled sufficient facts to show it is entitled to relief with respect to its claims in the Amended Complaint against Namecheap.

17

DATED this 26th day of July, 2011.


BATEMAN IP LAW GROUP

/s/C. Todd Kinard

Randall B. Bateman
Perry S. Clegg
C. Todd Kinard
Sarah W. Matthews

*Attorneys for Plaintiff*
Global Marketing Strategies, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that a true and correct copy of the foregoing

**MEMORANDUM IN OPPOSITION TO DEFENDANT NAMECHEAP'S MOTION TO**

**DISMISS** and this **CERTIFICATE OF SERVICE** were served on opposing counsel via

CM/ECF this 26th day of July, 2011, as follows:

    **James E. Magleby**
    magleby@mgpclaw.com

    **Jennifer F. Parrish**
    parrish@mgpclaw.com

    **Eric K. Schnibbe**
    schnibbe@mgpclaw.com

    **Eugene Rome**
    erome@romeandassociates.com

                    /s/C. Todd Kinard

19